IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CHUN MEI TONG, #11062-122, | Civil No. 22-00543 JAO-WRP |
| Petitioner, | ORDER DISMISSING PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241 |
| v. | |
| ESTELA DERR, WARDEN, | |
| Respondent. | |

**ORDER DISMISSING PETITION FOR
A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**

Pro se Petitioner Chun Mei Tong ("Petitioner" or "Tong") filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 ("Petition"). ECF No. 1. Petitioner alleges that the Federal Bureau of Prisons ("BOP") incorrectly applied her earned time credits under the First Step Act ("FSA") and under the Second Chance Act ("SCA").

The Court elected to decide this matter without a hearing pursuant to Rule 7.1(c) of the Local Rules of Practice of the United States District Court for the District of Hawaii. For the reasons set forth below, the Court DISMISSES the Petition without leave to amend.

## I.    THE PARTIES' BRIEFINGS

Tong filed her Petition on December 28, 2022, Respondent filed her Response on February 24, 2023, and Tong filed her Reply on March 6, 2023. *See* ECF Nos. 1, 10, 11.  The Court subsequently ordered Respondent to file a response to the Reply, which she did on May 5, 2023. *See* ECF Nos. 14, 16.  Petitioner has also submitted numerous supplemental filings because of two BOP system updates to her credits and Respondent's Response to her Reply.

The Court offers the following to elucidate all the filings in this case:

| Date filed | Party | Document Title | ECF No. |
|---|---|---|---|
| 12/28/2022 | Petitioner | Petition | 1 |
| 2/13/2023 | Petitioner | Supplement to Petition after January 9, 2023 BOP-wide Sentry system updates | 7 |
| 2/24/2023 | Respondent | Respondent's Response to Petition | 10 |
| 3/6/2023 | Petitioner | Reply: Response to Respondent's ECF No. 10; In the Alternative Motion for Compassionate Release to Time Served | 11 |
| 3/8/2023 | Petitioner | Response to Warden Derr's ECF No. 10 (Supplement #1) | 12 |
| 3/10/2023 | Petitioner | Response to Warden Derr's ECF No. 10 (Supplement #2) | 13 |
| 4/24/2023 | Court | EO directing the Government to respond to Petitioner's allegations in her Reply, ECF No. 11. | 14 |

| 5/5/2023 | Petitioner | Supplemental Reply after 03/23/24 BOP Assessment update | 15 |
|---|---|---|---|
| 5/5/2023 | Respondent | Respondent Warden Estela Derr's Response to Allegations Raised in Petitioner's Reply | 16 |
| 5/15/2023 | Petitioner | Reply to Respondent's ECF No. 16 | 17 |

## II.   THE PARTIES' ARGUMENTS

Petitioner was sentenced to 66 months in prison and three years of supervised release on January 6, 2020.  ECF No. 1 at 2; ECF No. 10-3 at 3.  She is presently incarcerated in the Honolulu Federal Detention Center ("FDC Honolulu").  Petitioner originally alleged in her December 28, 2023 Petition that BOP had given her only 184 days of FSA earned time credits ("FSA credits"), but that she was entitled to (1) seventeen months of FSA credits — twelve months toward early release and five months toward a Residential Rehabilitation Center ("RRC"), and (2) a full twelve months of credit toward prerelease custody under the SCA.  *See* ECF No. 1 at 3; ECF No. 1-1 at 1.  She also admitted that she had not exhausted her administrative remedies.  ECF No. 1 at 2.  She alleged, however, that she had made efforts to utilize the administrative remedies process, but that BOP had thwarted her efforts to timely comply with the administrative process.  *Id*.; *see also* ECF No. 1-2 at 1–3 (providing chronology of her attempts to informally resolve her dispute and attempts to utilize the administrative remedies

process).  Based on her attempts to exhaust her administrative remedies and her

impending release date, she asked the Court to excuse her failure to exhaust.  ECF

No. 1 at 2.

On January 19, 2023, BOP updated its auto-calculation application and ran

new assessments for all eligible inmates.  *See* ECF No. 10 at 4.  The update

reflected that Petitioner was entitled to 495 days of FSA credits, with 365 days to

be applied toward supervised release and 10 days toward RRC.[1]  ECF No. 10-4 at

2 ("01/19/23 Credit Assessment").  Respondent asserts that Petitioner's statutory

release date is October 13, 2024, but after the FTC credits are applied, her

projected release date is October 14, 2023.  Respondent thus argues Tong's

Petition is moot because Petitioner has received the specific relief she requested in

her Petition.  ECF No. 10 at 4–5.  Respondent also argues that alternatively, the

Court should dismiss the Petition because of Petitioner's failure to exhaust her

administrative remedies.  *Id*. at 5.

Respondent also contends that Petitioner is projected to transfer to prerelease

custody on April 14, 2023; however, because there are no RRC or home

---

[1]  This number did not reflect where the remaining 120 days of FSA credits would
be applied (495 days of FSA credits – 365 FSA credits toward supervised release –
10 days toward RRC/HC=120 days).  As explained later in this Order, however, it
appears BOP ran another credit assessment in March of 2023 to reflect that she has
130 days of FSA credits remaining.  *See* ECF No. 17-1 at 1.

confinement ("HC")[2] locations in Hawaiʻi, Petitioner will be placed in the Federal Location Monitoring Program ("the FLMP"), where she will live in a residence approved by her release plan, and where the U.S. Probation Office ("USPO") will supervise her during her period of prerelease custody. *See* ECF 10-1 at 8, Declaration of Kris Robl ("Robl Decl.").

Petitioner makes a number of assertions and requests in her Reply. First, she argues her Petition is not moot because although the application BOP used to automatically calculate her FSA credits was updated, the new calculation is still short 160 days. ECF No. 11 at 1. Tong asserts that she should have received 15 days of FSA credit for every 30 days that she's been incarcerated, instead of the 10 days that BOP credited her. *Id.*

Second, Petitioner contends that the Court should not dismiss her Petition for failure to exhaust administrative remedies because the remedies were not available to her. *Id.* at 2. Tong alleges that she "was not given the BP-10 form" and "was prevented from appealing" the Warden's denial within the 15-day deadline. *Id.*

Third, she seeks alternative relief in the form of compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) based on the "extraordinary and

---

[2] Hawaiʻi does offer HC as a prerelease custody option so the Court believes Respondent inadvertently included HC with RCC. The Court understands Hawaiʻi does not have any RCCs to place prisoners eligible for prerelease custody.

compelling circumstances" of BOP failing to correctly apply her FSA credits. *Id.* at 3.

Finally, Tong alleges that the statements in BOP's response, particularly in Mr. Robl's declaration, are inaccurate. *Id.* at 3. Tong explains that despite Mr. Robl's assertions that BOP has begun to process her prerelease custody into the FLMP, she received an email from BOP on March 2, 2023, that USPO had denied her request for placement in the FLMP and her release from incarceration is now October 14, 2023. *Id.* Petitioner also appears to be confused as to why USPO has the authority to deny prerelease custody. *Id.* at 4.

Her subsequent March 8, 2023 filing alleges that she should have been released on May 14, 2022 if BOP had correctly applied her FSA credits and complied with the SCA. ECF No. 12. Her next March 10, 2023 filing continues to challenge the denial of her FLMP request, particularly because she argues that USPO is not the proper agency to be handling prerelease custody requests. ECF No. 13.

On March 28, 2023, it appears that BOP again updated Petitioner's FSA credits ("03/23/23 Credit Assessment"). *See* ECF 17-1 at 2. Her new calculation continues to reflect that she is entitled to 495 days of FSA credits, with 365 days to be applied toward supervised release, but 130 days toward RRC/HC instead of the 10 days reflected in the 01/19/23 Credit Assessment. *Id.* Tong filed a

Supplemental Reply on May 5, 2023, agreeing that 365 days was the correct amount to apply toward supervised release, but that she was entitled to 190 days under the FSA toward prerelease custody, not 130.  ECF No. 15 at 2.  She also alleges that she is entitled to have 179 days applied toward HC under the SCA, for a total of 369 days of credit toward prerelease custody.  *Id.*

Respondent filed her Response to Petitioner's Reply pursuant to the Court's April 24, 2023 EO directing the Government to respond to Petitioner's allegations in her Reply that BOP failed to give her the BP-10 form and was prevented from appealing the Warden's denial.  ECF No. 16.  Respondent disputes Petitioner's assertion that BOP refused to give her the form and contends that BOP has "never refused Petitioner's request for administrative remedy forms."  ECF 16 at 2.

Petitioner's final filing in support of her Petition points out that Respondent's Response showed that only ten days would be applied toward prerelease custody, but that the 03/25/23 Credit Assessment now shows that she is entitled to 130 days.  ECF 17 at 2.   She contends that she is entitled to have 190 days toward prerelease custody under the FSA, but that she is still incarcerated as of May 11, 2023, so none of her credits have been applied toward prerelease custody.  *Id.*

### III.   STANDARD OF REVIEW

When a federal or state prisoner contends that she "is in custody in violation

of the Constitution or laws or treaties of the United States," § 2241 confers a general grant of habeas jurisdiction. 28 U.S.C. § 2241(a), (c)(3). "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus[.]" *Muhammad v. Close*, 540 U.S. 749, 750 (2004). So, a petitioner challenging the manner, location, or conditions of the execution of her sentence must file a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Habeas Petition").

A court entertaining a Habeas Petition must "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 USC § 2243. The district court should not dismiss a Habeas Petition "without leave to amend unless it appears that no tenable claim for relief can be pleaded were such leave granted." *Jarvis v. Nelson*, 440 F.2d 13, 14 (9th Cir. 1971).

## IV.   DISCUSSION

## A.   The Jurisdictional And Prudential Hurdles

Before the Court may address the merits of the Petition, the Court addresses the jurisdictional and prudential hurdles presented by Respondent. First, the Court addresses Respondent's argument that this Court lacks jurisdiction based on mootness. If the case is not moot, the Court must next decide whether to

prudentially require Petitioner to exhaust her administrative remedies or if there is a reason to excuse her failure and entertain the merits of the Petition.  The Court concludes this case is not moot and there are sufficient reasons to excuse her failure to exhaust.

### 1.     Mootness

Article III of the Constitution limits the jurisdiction of the federal courts to "actual, ongoing" cases and controversies.  U.S. Const. art. III, § 2, cl. 1; *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990); *see United States v. Strong*, 489 F.3d 1055, 1059 (9th Cir. 2007).  "Failure to satisfy Article III's case-or controversy requirement renders a habeas petition moot."  *Kittel v. Thomas*, 620 F.3d 949, 951 (9th Cir. 2010) (citation and internal quotation marks omitted).  A habeas petition is moot if: (1) a petitioner has received the relief requested in the petition; or (2) the court is unable to provide the relief requested.  *See Munoz v. Rowland*, 104 F.3d 1096, 1097–98 (9th Cir. 1997); *American Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997) ("If an event occurs that prevents the court from granting relief, the claim is moot and must be dismissed.").

Respondent argues that the Petition is moot because Petitioner "has received the specific relief that she requested in her Petition."  ECF No. 10 at 4.  But Respondent ignores the specific relief Tong requests.  Although the 01/19/23

Credit Assessment shows that Petitioner's FSA credits were recalculated to reflect 375 days of earned FSA credits, that is not the specific relief Petitioner seeks. Tong argued in her Petition that if the FSA credits and credits under the SCA had been applied correctly, she should have been released to RRC/HC in May of 2022. ECF No. 1 at 2.

So BOP has not granted Petitioner the specific relief she requests, i.e., to be released to RRC/HC immediately. There is also no indication that the Court cannot provide the relief requested, e.g., if Petitioner had already been released for other reasons. The Court thus concludes that the Petition is not moot and amounts to a live controversy. The Court maintains jurisdiction over the Petition.

### 2.    Exhaustion Of Administrative Remedies

Petitioner began the administrative remedies process, both informally and formally. Petitioner first emailed the Unit Team on June 23, 2022, requesting "to apply for eligibility" under the SCA and for "early review" of her FSA credits. ECF No. 1-1 at 5. The Unit Team informed her on July 6, 2022, that her review pursuant to the SCA would occur at the next team meeting. *Id*. Petitioner then filed a BP-8 form on July 19, 2022, and was informed that because SCA reviews were ordinarily completed "17-19 months from the current release date," she would be reviewed for RCC or home confinement during that timeframe. *Id*. at 4.

10

On August 4, 2022, Tong filed a BP-9 form, which was denied on the same day for improperly filling out the form.  ECF No. 10-2 at 4.  A week later, Tong filed another BP-9 form, ECF No. 1-1 at 3, which was denied by the Respondent on October 20, 2022, *id*. at 2.  Respondent explained in her denial that if Petitioner was dissatisfied with the response, she could "file an appeal with the Regional Director at the Western Regional Office" within 20 days of the denial, and provided Petitioner the Director's address.  *Id*. at 2.  Petitioner then filed an additional BP-8 form on December 27, 2022, which the Unit Team responded to on January 3, 2023, stating the "automated system should go into effect January 9, 2023."  ECF No. 11-2 at 5.  Petitioner's last two BP-9 forms were rejected on February 9, 2023, and February 21, 2023, both for technical errors.  *Id*. at 2–3.

Despite Tong's attempts, it is undisputed that Petitioner did not exhaust the administrative remedies process.  ECF No. 1 at 2 ("I admit that I did not exhaust my administrative remedies before seeking relief under 28 U.S.C. Section 2241[.]"); ECF No. 10 at 7 ("[Petitioner] has not filed a BP-10 form with the Western Region Office appealing the Warden's denial. . . .  Therefore, Petitioner failed to exhaust her administrative remedies." (citation omitted)).  So the Court must determine whether there are grounds to waive the exhaustion requirement in this case before addressing the merits of her Petition.  The Court concludes it is a proper exercise of discretion to excuse her failure to exhaust.

Ordinarily, a federal prisoner must exhaust their administrative remedies before filing a federal habeas petition. *Tucker v. Carlson*, 925 F.2d 330, 332 (9th Cir. 1991). For challenges to BOP's handling of FSA credits, BOP requires federal inmates to complete a four-step administrative-remedies process, consisting of (1) presenting the issue of concern informally to staff, *see* 28 C.F.R. § 542.13(a); (2) submitting a formal request for administrative remedies to the facility's warden, *see id.* § 542.14(a); (3) appealing to the appropriate BOP Regional Director, *see id.* § 542.15(a); and (4) appealing to BOP's General Counsel, *see id.* The first step is carried out according to the procedures defined by each facility's warden. *See* 28 C.F.R. § 542.13(a). At FDC Honolulu, the first step involves submitting a "BP-8" complaint form to prison officials. ECF No. 10-1 (Robl Decl.) at 3, ¶ 5. The second, third, and fourth steps are consistent across BOP facilities; those steps correspond to submitting forms BP-9, BP-10, and BP-11, respectively. *See* 28 C.F.R. § 542.15(a).

If an inmate fails to complete all four steps of BOP's administrative-remedies process before filing a § 2241 habeas petition, the court should ordinarily dismiss the petition as a prudential matter. *See Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012). Indeed, courts may require exhaustion if:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow

> the agency to correct its own mistakes and to preclude the need for judicial review.

*United States v. Cal. Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983) (citing

*McGee v. United States*, 402 U.S. 479, 484 (1971); *McKart v. United States*, 395

U.S. 185, 193–95 (1969); *Stauffer Chemical Co. v. FDA*, 670 F.2d 106, 107 (9th

Cir. 1982), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162, 1169

(9th Cir. 2014); *Montgomery v. Rumsfeld*, 572 F.2d 250, 253 (9th Cir. 1978)).  On

the other hand, courts, in its discretion, may waive the exhaustion requirement in

various situations, including "where administrative remedies are inadequate or not

efficacious, pursuit of administrative remedies would be a futile gesture,

irreparable injury will result, or the administrative proceedings would be void."

*Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (internal quotation marks

and citation omitted).

  The Court concludes that the administrative remedies process is not

efficacious in this case and further pursuit would be a futile gesture.  The record

reflects that Petitioner has attempted to utilize the administrative remedies process

to resolve her objections to BOP's calculations.  *See* ECF No. 7-1 at 2–10; ECF

No. 11-2 at 2–5; ECF No. 11-3 at 2–3, ECF No. 12-1 at 3, ECF No. 12-2 at 2.

Despite her attempts to explain her position and BOP's attempts to explain its

position, the parties are missing each other's points.  There is also a fair amount of back and forth about whether BOP did indeed give her a BP-10 form.[3]

Importantly, the Court finds none of the reasons for requiring exhaustion in this case.  First, any agency expertise necessary to generate a proper record and reach a proper decision has been provided in the parties' filings.  Second, the Court does not find that relaxing the exhaustion requirement in this case would encourage the deliberate bypass of the administrative scheme.  Tong has made repeated attempts to exhaust her administrative remedies before she sought relief from the Court.  *See* ECF No. 11-2.  Finally, administrative review in this case is not likely to allow the agency to correct its own mistakes and preclude the need for judicial review.  Since Tong filed her Petition, BOP has updated her credits twice, and USPO has denied her entry into FLMP.  Petitioner simply does not understand what is going on, and the Court can see why.  The Court thus concludes that any further administrative review would not preclude the need for judicial review.  The Court thus excuses Petitioner's failure to exhaust her administrative remedies.

## B.    The Merits

---

[3]  If resolving the issue of whether Petitioner was refused the applicable form was dispositive, the Court would order an evidentiary hearing on the matter.  *See Hubbard v. Houghland*, 471 F. App'x 625, 626 (9th Cir. 2012); *Stine v. Colbert*, No. CV-21-00482-TUC-JAS (DTF), 2023 WL 2243081, at *2 (D. Ariz. Feb. 27, 2023).  But the Court need not make any findings on this particular issue as it exercises its discretion to excuse Petitioner's failure to exhaust.

1.      **10 days Or 15 Days Of FSA Credits**

The real issue here is that Petitioner misunderstands what she is entitled to under the FSA and the SCA.  Plaintiff believes that she should have earned 15 days of credit from 02/11/2020 to 11/04/2020, instead of the 10 days of FSA credit the 03/23/23 Credit Assessment reflects.  ECF No. 17-1 at 2.  Plaintiff is mistaken for two reasons.

First, Plaintiff was committed to BOP custody on 04/10/2020.  *See* ECF No. 10-3 at 2.  The FSA provides that a prisoner may not earn time credits for a program that the prisoner successfully completed before FSA was enacted nor "during official detention before the prisoner's sentence commences under section 3585(a)."  18 U.S.C. § 3632(b)(4)(B).  "A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."  18 U.S.C. § 3585(a).

Both the 01/19/23 Credit Assessment and the 03/25/2023 Credit Assessment reflect 02/11/2020 as "Start Incarceration," which is most likely the reason Petitioner believes she is entitled to start accruing 15 days of credit from this date rather than from the actual date of her incarceration, 4/10/2020.  *See* ECF No. 17-1

at 2–3.  Petitioner is not eligible to accrue any FSA credits until the date she was committed to FDC Honolulu, 4/10/2020.

Second, Plaintiff is mistaken that she is entitled to begin accruing 15 days of credit from the start of her incarceration.  It is impossible for any prisoner to begin accruing 15 days from the start of incarceration because the law requires two assessments before a prisoner is eligible to accrue 15 days.  Under 18 U.S.C. § 3632(d)(4), an eligible prisoner who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:

> (i)  A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.
>
> (ii)  A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, **over 2 consecutive assessments**, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

(emphasis added).  Respondent contends that in effect, prisoners do not begin to earn 15 days of time credits until after approximately one year because prisoners are assessed for FSA needs approximately every 180 days.  *See* ECF 10-1 (Robl Decl.) at 9 (citing BOP Program Statement 5410.01).  Further confusing matters for Petitioner (and the Court), however, is that the 01/19/2023 Credit Assessment shows that she did not start accruing 15 days of credit until 03/31/2022, nearly two

years after the date of her incarceration.  *See* ECF 17-1 at 3.  Then, without any notice to the Court, BOP again updated her credit assessment on 03/25/2023 to reflect that she began accruing 15 days beginning 11/04/2020, which is sooner than the timeframe Respondent purported it generally takes for a prisoner to earn 15 days.  The only reason the Court has this information is because Petitioner attached it to her latest filing on May 15, 2023.  *See* ECF 17-1 at 2.  It is not difficult to see why the Petitioner is confused about the state of her credits.

It appears that Petitioner received her first assessment on 04/20/2020.  *See* ECF 15-4 at 5.  The Court thus assumes that Petitioner received her second assessment 180 days later (approximately at the end of October/beginning of November 2020), making her eligible to earn 15 days of credit starting 11/04/2020. Assuming that the 03/25/2023 Credit Assessment is now accurate, the Court concludes that Petitioner has earned what she is entitled to under the FSA — 10 days of credit for the period of 04/10/2020-11/04/2020, and 15 days for the period of 11/04/2020-03/25/2023, for a total of 495 days of credits.  So Petitioner is mistaken that she should have received 15 days of credits (for a total of 555 credits) for the entire period of her incarceration.  *See* ECF No. 15 at 2 (stating that BOP is missing 60 days of FSA credits from its calculations).

Petitioner's statutory release date, or release to supervised release, is 10/13/2024.  *See* ECF 10-3.  A prisoner is eligible to apply a maximum of 365

days toward supervised release.  *See* 18 U.S.C. § 3624(g)(3) (providing that if the sentencing court included as a part of the prisoner's sentence a requirement that the prisoner be placed on a term of supervised release after imprisonment, the prisoner may be transferred to begin supervised release at an earlier date based on the application of time credits, "not to exceed 12 months").  After the maximum number of credits are applied toward her supervised release date, Petitioner is eligible for supervised release on 10/13/2023.  *See* ECF 10-1 (Robl Decl.) at 8. The Court concludes that BOP's calculations showing that she is only entitled to 15 days starting on 11/04/2020 do not violate the validity of her confinement.

### 2.   Remainder Of Petitioner's FSA Credits

After applying the 365 days of credit toward supervised release, Petitioner has an additional 130 days of credit, and these credits may be applied toward "prerelease custody."  *See* BOP Program Statement 5410.01 CN-2 (March 10, 2023) ("Pre-release placement in a Residential Reentry Center (RRC) or Home Confinement (HC) will be based on FTCs other than those credits already applied to early transfer for supervised release."), *available at* https://www.bop.gov/policy/progstat/5410.01_cn2.pdf, last visited on June 9, 2023. FSA defines "prerelease custody" as home confinement or an RRC.  *See* 18 U.S.C. § 3624(g)(2).  Applying the 130 days of remaining credits would make her eligible for prerelease custody on 6/6/2023.

According to BOP, Petitioner's "home detention date" was 4/14/2023, six months before her supervised release date.  *See* ECF No. 10-1 (Robl Decl.) at 10.  Indeed, under 18 U.S.C. § 3624(c)(2), a prisoner is eligible for home confinement for "the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months," i.e., a maximum of 6 months, not for a period longer than 10 percent of the imprisonment term or 6 months, as Petitioner believes, *see* ECF No. 15 at 2.  Section 3624(c)(2) also provides that BOP must, "to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this section."

But this is not the end of Petitioner's story.  BOP requested that she be placed in prerelease custody on 04/18/2023.  *See* ECF No. 13-1 at 2.  This would have given Petitioner more than the 130 days of her remaining credits, as it would have given her 179 days toward prerelease custody.  The problem for Petitioner is that despite Respondent's understanding that she would be approved and transferred to the FLMP in April of 2023, *see* ECF 10-1 (Robl Decl.) at 10, USPO denied BOP's request to place her in the FLMP because "Defendant failed to abide by her conditions of release while on bond."  ECF No. 13-1 at 2.

Petitioner is confused as to why USPO has the authority to make such determinations.  *See* ECF No. 13 at 1; ECF No. 15 at 3.  Under 18 U.S.C § 3624(g)(7), BOP must, to the greatest extent practicable, "enter into agreements

with United States Probation and Pretrial Services to supervise prisoners placed in home confinement under" 18 U.S.C § 3624(g), which governs prelease of prisoners eligible for FSA credits ("FSA Prerelease section"). So although Petitioner is correct that this section demonstrates that USPO's role is to supervise prisoners once they have been placed in home confinement, this section also authorizes BOP to enter into agreements with either USPO or Pretrial Services to assist with prerelease custody. The FLMP is a result of such an agreement between BOP and USPO.

The FLMP is a joint program between the BOP and U.S. Probation and Pretrial Services Office ("PPSO"), in which the BOP's residential reentry management refers inmates for consideration into the FLMP and the PPSO determines whether to accept the inmate. *See* U.S. Gov't Accountability Off., GAO-16-516, Federal Prison System: Justice Has Used Alternatives to Incarceration, But Could Better Measure Program Outcomes 5, 27, 28 (2008). So here in Hawaiʻi, because there are no RRCs, BOP selects inmates eligible for prerelease custody and refers them to the USPO, who has the ultimate authority in accepting or denying the selected inmate. *See id*. at 34 ("The fiscal year 2015 interagency agreement between BOP and PPSO for the FLM program calls for BOP and PPSO to jointly develop additional plans for identifying and selecting inmates, which could help reduce rejections.").

The Court understands it is frustrating for Petitioner that BOP approved her for prerelease custody, only to have USPO deny BOP's request. But it is fully within USPO's discretion to do so and it provided a reason for denying BOP's request: "Defendant failed to abide by her conditions of release while on bond." ECF No. 13-1 at 2. So, despite having earned 130 FSA credits toward prerelease custody, Petitioner is unfortunately not eligible to be transferred to prerelease custody. The Court concludes that USPO's denial does not violate the validity of her confinement.

### 3.    Second Chance Act

Because Petitioner is not eligible for prerelease custody, it does not matter how many credits she has accumulated over the maximum 365 days that have already been applied toward supervised release. But the Court will address Petitioner's argument that in addition to her FSA credits, she is entitled to 179 days under the SCA.

Petitioner believes that she has earned 179 days under the SCA, *see* ECF No. 15 at 1–2, but she is mistaken about what the SCA entitles her to. Part of the SCA is codified at **18 U.S.C. § 3624(c)**. Second Chance Act of 2007: Community Safety Through Recidivism Prevention, Pub. L. No. 110–199, April 9, 2008, 122 Stat 657. Section 3624(c) of the SCA "governs the designation of prisoners to

RRCs for the final months of their sentences." *Sacora v. Thomas*, 628 F.3d 1059,

1062 (9th Cir. 2010).  Section 3624(c) provides that:

> The [BOP] must, to the extent practicable, ensure that a prisoner
> serving a term of imprisonment spends a portion of the final months
> of that term (not to exceed 12 months), under conditions that will
> afford that prisoner a reasonable opportunity to adjust to and prepare
> for the reentry of that prisoner into the community. Such conditions
> may include a community correctional facility.

The SCA is not, however, "an additional source of time 'credits." *Untalan*

*v. Derr*, No. CV 23-00091 JMS-RT, 2023 WL 2868519, at *4 (D. Haw. Apr. 10,

2023) (citing *Suggs v. Saad*, 2017 WL 1862468, at *5 (N.D.W. Va. May 9, 2017)

("[T]he Second Chance Act does not require that an inmate receive a full twelve

months of halfway house placement, only that an inmate be considered for

placement up to twelve months to the extent practicable.").  However, Section

3624**(b)**, "the good time credit provision," which is not part of the SCA, is a source

for additional time credits.  *Bottinelli v. Salazar*, 929 F.3d 1196, 1197 (9th Cir.

2019) (citing 18 U.S.C. § 3624(b)).

The good time credit provision requires BOP to permit prisoners to earn "up

to 54 days for each year of the prisoner's sentence imposed by the court[.]"  *Id.*

(quoting the First Step Act of 2018, Pub. L. No. 115-391, § 102(b), 132 Stat.

5194).  The criteria for this credit is different than the FSA.  For credits under

Section 3624(b), BOP considers whether the prisoner has displayed exemplary

compliance with institutional disciplinary regulations during the applicable year

22

and also considers a prisoner's progress toward earning a high school diploma or equivalent degree, in awarding credits.  18 U.S.C. § 3624(b)(1).  The Court suspects that the 179 days Petitioner is referring to are credits she earned under the good time credit provision ("GTC") because she has been incarcerated for over three years.

But even if it were true that she was eligible for 130 days of FSA credit and 179 days of GTC for a total of 309 days of credit to be applied toward prerelease custody, the SCA provides that a prisoner may be placed in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. *Id*. § 3624(c)(2).  The shorter of the two in Petitioner's case is 10 percent of the term of her imprisonment, which would be approximately four months.  Adding the rest of her FSA credits to this would result in home confinement for longer than is permitted by Section 3624(c)(2).  So she is not eligible to apply an unlimited number of credits toward prerelease custody.  She is only permitted a maximum of six months of home confinement no matter how many credits she has remaining after applying the 365 days toward supervised release.

In any case, she is not entitled to apply any of her remaining credits, whether she earned it under the FSA or Section § 3624(b) because USPO has denied BOP's request to place her in FLMP.  There is nowhere else for the credits to be applied.

So BOP's inability to apply her remaining credits toward prerelease custody does not violate the validity of her confinement.

The Court concludes that based on the most recent credit assessment calculations in the record, the requirements under 18 U.S.C. § 3624, and USPO's denial of her entry into FLMP, Petitioner must remain incarcerated until October 14, 2023.

### 4.    Compassionate Relief

In Petitioner's Reply to Respondent's Response, she seeks for the first time, compassionate release as an alternative form of relief.  ECF No. 11.  Petitioner must go through the proper channels before asking the Court to reduce her sentence.

Under 18 USC § 3582(c)(1):

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) . . . .

In other words, a court cannot consider a motion for compassionate release unless:

(1) BOP files the motion on the inmate's behalf; or

(2) the inmate has requested that the BOP make such a motion and either (a) the inmate has "fully exhausted all administrative rights to appeal a

failure of the [BOP] to bring a motion on the [inmate]'s behalf," or (b) 30 days have elapsed since the "warden of the [inmate]'s facility" received a compassionate-release request from the inmate.

*United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021) (brackets in original) (quoting 18 U.S.C. § 3582(c)(1)(A)).  Petitioner requested compassionate release in a reply brief concerning her Petition for Habeas and there is no indication that she first requested compassionate release with the Warden or that the Warden denied her request, thus permitting her to begin exhausting her administrative remedies.  Under these circumstances, the Court will not consider her request for compassionate relief.

## V.    PLAIN LANGUAGE FOR PETITIONER

Understanding confusion may remain, the Court offers the following plain language for Petitioner.

You are only eligible to begin earning credits, starting from the day you were committed to FDC Honolulu, April 10, 2020.  After eligibility was determined, you began earning 10 days of credits a month and were only eligible to earn 15 days of credit after you had received two consecutive assessments.  You received your first assessment on April 20, 2022.  It appears you received a second assessment sometime before November 4, 2022, at which time, you began earning 15 days of credit.  So BOP is correct that you earned 10 days for the period

between 04/10/2020 and 11/04/2020, and were only eligible to begin earning 15 days starting on 11/04/2020.  You have a total of 495 days of credit.

After applying the maximum number of days permitted toward supervised release, 365 days, you are eligible for supervised release on October 14, 2023. You do have an additional 130 days of FSA credits that generally would be applied toward prerelease custody.  Hawai'i does not have an RRC, so you are only eligible for home confinement.  BOP recommended you for home confinement through FLMP, a joint program between BOP and USPO, which is allowed under the law.  USPO has the proper authority to accept or deny your acceptance into FLMP.  USPO denied your placement because you "failed to abide" by your "conditions of release while on bond."

You also may have earned an additional 179 days of credit, but the law does not permit any prisoner to be placed in home confinement for longer than six months.  So it does not matter if you have accumulated enough credits to be placed in home confinement for almost a year (130+179).  Six months of credit is the maximum time that can be applied toward home confinement prerelease custody. In your case, however, despite having enough credits to apply toward six months of home confinement, you are not eligible for prerelease custody because USPO has denied your placement in FLMP.  Unfortunately, there is nowhere else to apply

your remaining credits so you must remain at FDC Honolulu until October 14, 2023.

As far as any motions for compassionate release, you must first file a request with the Warden.  The Court will not consider any motions for compassionate release unless the BOP files the motion on your behalf or until you first submit your request with the Warden, and if denied, attempt to exhaust your administrative remedies.

## VI.   CONCLUSION

For the above reasons, the Petition is DISMISSED WITHOUT PREJUDICE.  In addition, the Court concludes that there is no tenable claim for relief that can be pled even if this Court were to grant Petitioner leave to amend.  The Court's dismissal of the Petition is thus, without leave to amend.

The Clerk is DIRECTED to close this case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, June 14, 2023.



Jill A. Otake
United States District Judge

CV. 22-00543 JAO-WRP, *Tong v. Derr*; ORDER DISMISSING PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241